IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELLIS WAMSLEY, IV, | § | |
| Petitioner, | § | |
| | § | 3:17-CV-434-B |
| v. | § | 3:15-CR-495-B (BT) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge follow:

I.

Petitioner filed this petition to vacate, set-aside, or correct sentence under 28 U.S.C. § 2255. For the following reasons, the Court recommends that the petition be DENIED.

Petitioner pleaded guilty to money laundering by engaging in monetary transactions using criminally derived property and aiding and abetting in violation of 18 U.S.C. §§ 1957 and 2. On October 31, 2016, the district court sentenced him to 54 months in prison. Petitioner filed an

appeal, but later filed a motion to voluntarily dismiss the appeal.  On February 6, 2017, the Fifth Circuit Court of Appeals dismissed the appeal pursuant to Petitioner's motion.

On February 8, 2017, Petitioner filed the instant § 2255 petition.  He argues:  (1) he is actually innocent of the money-laundering charge because the government did not prove the required interstate nexus for the underlying crime of wire fraud; and (2) he received ineffective assistance of counsel when counsel did not investigate or challenge the lack of interstate wire transmissions.

## II.

The following factual background is taken from the presentence report ("PSR").

In 2003, Petitioner formed a non-profit organization named FAIM to "provide financial literacy" and to "effectively emancipate, educate, and empower the Greater Dallas Community both corporately and individually by facilitating economic development."  In 2010, Petitioner hired co-defendant Howard to work as a financial consultant for FAIM.  In the summer of 2010, Petitioner and Howard reached an agreement with investor M.R. to participate in a joint venture with FAIM. M.R. was the owner/operator of corporate entity "Company R."  Petitioner and

Howard told investor M.R. (as the owner of Company R) that the business purpose of a proposed joint venture would be to generate funding for FAIM economic development projects in the southern sector of Dallas, Texas, and also throughout the United States.  M.R. believed FAIM would use the funds to build elderly assistance facilities in South Dallas.

On August 2, 2010, M.R. (through corporate investor Company R) transferred $2,000,000 via wire transfer, to a FAIM brokerage account.

In about September 2010, trading began with M.R.'s funds, which were then deposited into an investment account at Merrill Lynch.  During the approximate period from November 2010 to April 2012, Petitioner and Howard deceived investor M.R. by concealing the true balance of the investment accounts from investor M.R.  During the period from October 2010 through 2011, the investment account lost money.

M.R. began requesting information regarding his investment because he had not been provided the log-in credentials to the Merrill Lynch investment account.  Petitioner instructed Howard to send emails to M.R. assuring M.R. that the investments were doing well.  Howard sent several emails to corporate investor Company R (through M.R.) which contained regular updates on the current balance of investor Company R's investment account statements. These emails to M.R. contained

comments and financial information which falsely represented the true balance in the Merrill Lynch investment account. Specifically, on both November 4, 2010, and again on January 21, 2011, Howard sent emails to investor M.R. which falsely inflated the true investment account balance.

During the period from the fall of 2010 through at least April 2012, Petitioner fraudulently transferred Company R investment funds from the Merrill Lynch investment account to FAIM's Citibank business accounts. Petitioner later unlawfully spent these investment funds for the personal benefit of himself, Howard, and others.

As a result of the scheme, M.R. lost his investment. As stipulated in Petitioner's Factual Resume, the loss to M.R. was calculated at $1,850,000.

PSR ¶¶ 12-20.

### III.

### 1.  Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's

performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Petitioner claims the government did not prove the required interstate nexus for the underlying crime of wire fraud, and that his counsel failed to investigate or raise this issue.

Petitioner cites *United States v. Biyiklioglu*, 652 F. App'x 274 (2016), to argue that the mere use of the internet does not establish an interstate connection for wire fraud. In *Biyiklioglu*, the Fifth Circuit reversed a conviction involving wire fraud where the government failed to establish interstate wire transmissions. In that case, the defendant lived in Louisiana and sent fraudulent transmissions to PayPal, whose servers were located

outside of Louisiana. The Court found it was undisputed that PayPal had no servers located in Louisiana, but the government failed to present any evidence that Petitioner sent his wire transfers from Louisiana. (*Id.* at 281.)

Here, Petitioner admitted in his Factual Resume that the relevant fraudulent wire transmissions, made on November 4, 2010, and January 21, 2011, initiated from computers in Texas and went to Gmail servers outside of Texas. (ECF No. 27 at 8; ECF No. 5 at 9-10.) He has also submitted no evidence that the fraudulent transmissions were not interstate transmissions. Petitioner has failed to establish that he received ineffective assistance of counsel. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (stating counsel is not required to file frivolous motions).

**2.    Actual Innocence**

Petitioner claims he is actually innocent of the money-laundering charge because the government did not prove an interstate nexus for the underlying crime of wire fraud.

A claim of actual innocence independent of constitutional infirmity at trial is not cognizable on habeas review. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1988). Further, to be credible, a claim of actual innocence must be based on reliable evidence *not* presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means "factual innocence" and not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998);

*United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999). Where a petitioner asserts his actual innocence, he must show, as a factual matter, that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition. *Schlup*, 513 U.S. at 327.

Here, Petitioner has failed to meet this high standard. As discussed above, Petitioner admitted the interstate nexus of the fraudulent transmissions, and has submitted no evidence on habeas review that the interstate nexus did not exist. Petitioner's claim should be denied.

IV.

For the foregoing reasons, the Court recommends that Petitioner's §2255 petition be DENIED.

Signed April 23, 2018.

_Rebecca Rutherford_

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).